[Crim. No. 2852.   Third Dist.   Dec. 31, 1958.]

THE PEOPLE, Respondent, v. CHARLES WOODS, Appellant.

Eileen M. Sullivan, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

VAN DYKE, P. J.—By indictment, defendant-appellant Charles Woods was accused by the grand jury of Solano County of the crime of murder in that on September 18, 1955, in Vallejo, California, he murdered Nellie Driskell. On November 28th, appellant was arraigned and entered a plea of not guilty. On December 5th, the court granted his motion to enter an additional plea of not guilty by reason of insanity. On January 16, 1956, the court granted his motion to withdraw his pleas and to enter a new and different plea. Thereupon, he personally and through counsel entered a plea of guilty. The court received evidence to determine the degree of the crime, thereafter pronounced a judgment of conviction of murder in the first degree, and sentenced appellant to the state prison for life. Throughout the proceedings appellant was represented by counsel.

The sole contention raised by appellant is that as a matter of law the evidence is insufficient to justify the court's finding him to be guilty of murder in the first degree. He asks this court to reduce the degree of the offense to murder of the second degree. A thorough examination of the entire record, however, convinces us that the trial court's finding of murder in the first degree is supported and that the judgment herein appealed from must be affirmed.

On this appeal this court, at appellant's request, appointed Eileen M. Sullivan to represent appellant. Counsel has filed on his behalf herein a persuasive brief in support of the contention that the evidence is insufficient to support a finding of first degree murder. The attention of the court has been directed to the discussion of first degree murder appearing in *People* v. *Bender*, 27 Cal.2d 164, 183 [163 P.2d 8], wherein the Supreme Court said:

"The adjective 'deliberate' means 'formed, arrived at, or determined upon as a result of careful thought and weighing of considerations; as a *deliberate* judgment or plan; carried on coolly and steadily, esp. according to a preconceived design; . . . Given to weighing facts and arguments with a view to a choice or decision; careful in considering the consequences of a step; . . . unhurried; . . . Characterized by reflection; dispassionate; not rash.' (Webster's New Int. Dict., (2d ed.).) The word is an antonym of 'Hasty, impetuous, rash, impulsive.' (Id.) . . . The verb 'premeditate' means 'To think on,

and revolve in the mind, beforehand; to contrive and design previously.' (Webster's New Int. Dict., 2d ed.).) ''

Our attention is also directed to the approval in *People* v. *Bender* of a statement in *People* v. *Howard*, 211 Cal. 322, 329 [295 P. 333, 71 A.L.R. 1385], reading:

''. . . 'When the killing is proved to have been committed by the defendant, and nothing further is shown, the presumption of law is that it was malicious and an act of murder; but in such a case the verdict should be murder of the second degree, and not murder of the first degree.' ''

Counsel cites a number of other decisions discussing the degree of proof required to establish murder of the first degree where the degree of the crime depends upon the presence or absence of premeditation, as is the case here. We feel compelled, however, to say that the record here does not present a case of murder of the second degree as a matter of law; that the proof does no more than to require the trial court in the exercise of its discretion to determine the degree of the crime to have been either first or second degree without power in an appellate court to reverse the conclusion of the trial court that appellant was guilty of murder in the first degree.

Because of the seriousness of the issue presented we think we are justified in relating the evidence in considerable detail. Defendant and appellant Charles Woods shot Nellie Driskell with an automatic pistol shortly before 10:15 a.m. on Sunday, September 18th at the Johnson home in Vallejo, where she lived with her mother and stepfather and other relatives. Woods and Nellie Driskell had been keeping company about two years. Nellie was divorced.

Woods had given two extrajudicial statements, one to Deputy Richey of the sheriff's office at 1:05 p.m. on the day of the shooting and the other to the district attorney at 12:30 p.m. on September 19th. The two statements were read into evidence.

On Sunday morning Nellie's stepfather, John Johnson, and his young son Rickey met Woods and accompanied him in his car to the Johnson home. When Johnson entered the living room, Grace Byas, Nellie's cousin, was sitting in a chair, Nellie was sitting on a daybed, and Leonard Walker, an airman from Travis Air Force base, was asleep on a chesterfield.

Johnson testified: He (Johnson) went directly into the bathroom and about 10 minutes later heard three shots, "bing,

bing, bing.'' He ran immediately into the living room. With a pistol in his hand pointed at Johnson, Woods walked backward out the front door. Nellie was lying on the floor against the kitchen door.

Grace Byas testified: Woods came into the living room through the front entrance as Johnson handed her some fly spray he had bought. Woods sat down beside Nellie. Grace sprayed some of the spray on Nellie who got up and opened a window and then closed it at Grace's insistence. Grace continued spraying and talking about the spray. Woods, pointing his gun at Nellie, got up, said ''Grace, call the cops.'' Nellie said, ''Charles, don't point that gun toward me.'' Thereupon, Grace ran toward the back door. Grace heard three shots, the first when she was in the kitchen, the second from the back yard and the third from beside the house next door. Grace estimated that appellant Woods entered the living room three to five minutes after Johnson and was there 20 or 25 minutes before the shooting commenced.

Walker testified: He was awakened by a scream and the sound of running footsteps, heard a shot and saw Nellie fall against the wall. Appellant pointed his gun toward Nellie and shot. That was the third shot. Immediately thereafter Johnson stuck his head around the bedroom door, and Woods raised the automatic pistol and said, ''Come out, Bubby, I want you, too.'' Johnson stepped back and Woods turned around and walked out.

Grace Byas testified further: The preceding Monday when Grace was on lower Georgia Street she saw Nellie get up off the street. Nellie said that Woods had pushed her and she fell, that he had humiliated and embarrassed her and would not have an opportunity to do that again. Regarding this occurrence Woods testified that he and Nellie had been drinking and had quarreled over the fact that Nellie ran out of gas when she drove appellant's car to work and had no money to buy gas; that Nellie started to walk away; that he pulled her and she slipped and fell on the sidewalk.

Woods testified further: He saw Nellie on Thursday night and she told him she was sleepy and tired and had to work the next morning. On Friday night he went to the 126 Club where Nellie was working in the kitchen alone. She saw the gun in his belt and asked, ''What are you doing with that?'' He adjusted the gun in his belt and she said, ''Leave it there.'' Then he told her he would see her later and left.

Friday night Woods went to Nellie's home. A deputy had

been called and was there when Woods arrived. The officer told him that Nellie was afraid and asked him if he had "pulled" a gun on her at the restaurant. Woods replied that he had not "drawn" a gun on Nellie. The officer told appellant to stay away from Nellie's house unless he had an invitation to go there.

On cross-examination Woods was asked what his purpose was in going to see Nellie Friday night after the incident in the restaurant. He answered, "Well, I didn't know what she wanted." He was asked further if he had given any consideration on Sunday morning to the warning given by the deputy sheriff. He said he had and concluded, "Well, there was nobody angry. She had time to cool off."

Johnson and Grace Byas each testified that neither detected the odor of alcohol on appellant's breath that morning. Grace said there was no drinking during the period of time appellant was in the living room and that he appeared disturbed. Walker testified that on that morning Woods appeared to have been drinking and looked somewhat haggard and sleepy. Another witness said that Woods appeared sober. The court asked Woods, "Would you say you were drunk or sober, I will put it that way, at the moment of the shooting?" Woods answered, "I was feeling pretty good."

In his statement to the district attorney Woods said that he usually had a gun when he went down town.

Woods testified further as follows: He had been separated from his wife about three years and he and Nellie planned to marry after he obtained a divorce. They had lived together about four months as man and wife in Berkeley. In answer to his inquiries the first time he telephoned on Sunday morning, Nellie said she was not "mad at" him. He told her he wanted to talk with her and would go to see her. She said, "I am still in bed," and hung up. Then he went to Cora's, a club on Georgia Street, where he and three others drank a pint and a half of whiskey. From Cora's he telephoned Nellie again. He told her, "I will see you later," and she said, "I will see you sometime." His purpose in going to see Nellie that morning was to reconcile their differences. He did not feel that their relationship was ended. He did not intend to hurt her in any way. If Nellie refused, then he would go back and try again. He was in love with Nellie. What took place in the Johnson living room that morning was rather hazy in his memory. When he arrived he sat down beside Nellie. In answer to his question she said she was not angry with him. Grace was

talking about fly spray. As well as he could remember, Nellie pushed him and he lost control of himself. He has a hot temper. Grace ran into the kitchen. He did not know why he started shooting. When he left his residence that morning he took the gun from under the front seat of his car and put it in his belt. It always had a shell in the chamber. He had no particular reason for carrying the automatic pistol with him on that particular day.

Woods said in his statement to the district attorney that he pulled the gun out, fired it at Nellie and that he was under the impression he was trying to hit her. "I just lost my head. I couldn't think there for a minute. In fact, I loved her. I felt that I couldn't give her up. I couldn't afford to lose her." In his statement to Deputy Richey, Woods said that after Nellie fell on the floor he thought she was dead and drove off in his car. His car stopped running and he abandoned it. He then walked to a fountain or club where he unsuccessfully tried to telephone the police.

We think the proper rule to apply to the foregoing evidence is that stated in *People* v. *Byrd,* 42 Cal.2d 200, at page 213 [266 P.2d 505], reading as follows:

". . . Direct evidence of a deliberate and premeditated purpose to kill is not required to sustain a conviction of first degree murder. Deliberation and premeditation may be inferred from proof of such facts and circumstances as will furnish a reasonable foundation for such an inference."

From the evidence the court could conclude this was a case, not uncommon, of a jealous and rejected lover who had determined he would kill his inamorata rather than let her go. Woods had "drawn a gun" on Nellie and for that had been warned by an officer to leave her alone, not to go to the house where she lived until invited. Notwithstanding this admonition he went, and being with Johnson who lived there he managed to get into the house. He was armed. His only attempt at justification of this is his statement he often carried a gun. This the trial court was not bound to accept. He was there for some time under pretense of peace. When rebuffed he killed. The court could well conclude this was premeditated murder.

The judgment is affirmed.

Schottky, J., and Warne, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.